John Funk, Defendant in Error, v. Chase Fowler, Plaintiff in Error.

Gen. No. 6,016.   (Not to be reported in full.)

Error to the Circuit Court of La Salle county; the Hon. EDGAR ELDREDGE, Judge, presiding. Heard in this court at the October term, 1914. Reversed and remanded. Opinion filed March 9, 1915.

## Statement of the Case.

Chase Fowler, the plaintiff in error, is a practicing lawyer, and for some time prior to July 12, 1906, had professional and business dealings with John Funk, the defendant in error, and in 1904 gave him an agreement for the conveyance of certain lands on conditions therein named, which was intended as security for moneys loaned and indemnity against loss on liabilities assumed by Funk as surety on notes of Fowler's. In 1905 Fowler gave Funk another similar writing covering other lands. There was a mortgage lien on some of these lands, and in June, 1906, there were judgments against Fowler and it was necessary to raise $5,000 or $6,000 to satisfy such indebtedness; and July 12, 1906, Fowler gave Funk a quitclaim deed of the land for an expressed consideration of $12,000 (which is not claimed to be the true consideration), and Funk by mortgaging the land secured a loan of $5,000, and with the money so obtained, and an additional sum furnished by himself, satisfied those debts. After which this statement was made: "July 31, 1906. This is to certify that John Funk and Chase Fowler have this day settled all past demands and claims to date, and C. Fowler is to furnish the Kempton matter in which Mr. Funk is partner.

CHASE FOWLER
JOHN FUNK."

On November 22, 1906, they executed an article of agreement for a warranty deed of the land from Funk to Fowler, reciting that Funk held the land in trust for Fowler, and agreed to convey to him upon Fowler's assuming the mortgage and paying Funk all sums of money that he had paid out for Fowler and had become obligated to pay for him, with interest at five per cent.; and providing that Fowler should have the use of the land in consideration of paying all taxes thereon, the interest on the mortgage debt, the interest to Funk on all sums that he has been compelled to advance for Fowler, and the interest on all obligations which Funk has become surety for or might thereafter become surety for or obligated to pay for Fowler.

Fowler kept possession of the land, excepting a small part thereof that was conveyed by Funk, until February, 1911, but defaulted on some of his obligations imposed by the contract, and Funk conveyed the land to his son-in-law, who got possession of it; whereupon Fowler began a forcible detainer suit before a justice of the peace to recover possession. The son-in-law reconveyed to Funk and he filed a bill in equity to enjoin the forcible detainer proceedings and prayed for a cancellation of the contract of November 24, 1906, and to have the deed declared an absolute conveyance, or if it should be held that Fowler had an equity of redemption, that the court fix the amount to be paid within a short day to be named.

The theory of the bill was that the deed was an absolute conveyance; that the subsequent contract was intended and should be construed the same as though Funk's title had no connection with Fowler; that the recital in the contract that Funk held the land in trust for Fowler was inserted by Fowler without Funk's knowledge; that the relation of attorney and client existed between the parties, and that Funk therefore reposed confidence in Fowler and signed papers prepared by him without question, and that the contract

was not binding on Funk if it contained anything indicating that the title was not in him absolutely; that Fowler had defaulted in performing obligations imposed on him by the agreement, and that a reasonable time for a conveyance thereunder to be demanded by Fowler had elapsed, and for that reason he had no further interest in the land. Fowler answered, claiming that the whole transaction was an attempt to give Funk security, in the nature of a mortgage, on the land in question, and that the article of agreement of November 22, 1906, was well understood by Funk when it was executed, and was in fact the written expression of the oral agreement and understanding between them when the quitclaim deed was executed. He also filed a cross-bill praying an accounting and reconveyance upon payment of the amount so to be found due.

A temporary injunction was granted on the original bill and a motion to dissolve it denied, and an appeal prosecuted by Fowler to this court, the orders of the trial court granting and refusing to dissolve the injunction, was affirmed. (*Funk v. Fowler,* 179 Ill. App. 356.)

The cause was referred to the master in chancery, who reported finding the allegations of the original bill true, and that the equities, were with the complainant therein, and recommended a decree, which was entered, finding the deed absolute and Fowler still indebted to Funk in the sum of $5,760.02, making the temporary injunction perpetual, and dismissing the cross-bill for want of equity; ordering Fowler to pay Funk said sum of $5,760.02, and in case of default that Funk have execution therefor, and further ordering that Fowler pay the taxable costs of the suit. From which decree, a writ of error was prosecuted.

McDOUGALL & CHAPMAN, for plaintiff in error.

LESTER H. STRAWN and M. N. ARMSTRONG, for defendant in error.

MR. PRESIDING JUSTICE CARNES delivered the opinion of the court.

### Abstract of the Decision.

MORTGAGES, § 21*—*when absolute deed held mortgage with right to redeem.* The evidence held to show that an absolute conveyance of land was given as security merely, and that the grantor was entitled to redeem on paying the amount due his grantee.

---

**A. T. Short, Appellant, v. O. F. Weisenborn, Appellee.**

**Gen. No. 6,021.**

1. PAYMENT, § 6*—*when acceptance of obligation of third person constitutes payment.* The receipt of an acceptance or note of a third person is ordinarily presumed to be a conditional rather than an absolute payment of an existing debt.

2. PAYMENT, § 6*—*when acceptance of obligation of third person presumed not intended as payment.* The mere acceptance by a creditor of the obligation of a third person makes it collateral security only; and it will be presumed that the parties did not intend it to operate as an immediate, absolute discharge of the original debt, unless accepted with an actual agreement to that effect or under circumstances from which arises a positive inference of a discharge.

3. NOVATION, § 1*—*what constitutes a novation.* A novation takes place where the maker of a note gave the payee an order on a third person for its payment from money due the maker, which was accepted by the third person, and the note was surrendered by the payee to the maker.

4. PAYMENT, § 6*—*when acceptance of order on third person constitutes payment of note.* An order on a third person given by the maker of a note for the amount thereof, and its acceptance by the payee, who thereupon surrendered the note to the maker, *held* a satisfaction of the original indebtedness.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.